UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

FLECT LLC,

                           Plaintiff,

                                                        21-cv-10376 (PKC)
            -against-

                                                        OPINION AND ORDER

LUMIA PRODUCTS CO. LLC and PETER LEI,

                           Defendants.

------------------------------------------------------------x

CASTEL, U.S.D.J.

                 Plaintiff Flect LLC ("Flect") is the alleged owner of United States Patent Number

11,045,689 ("the '689 Patent") and United States Trademark Registration Number 4,974,318

("the '318 Registration"), which relate to PELVIC CLOCK®, Flect's exercise product designed

to help individuals suffering from chronic hip and lower back pain.  (Compl. ¶¶ 1-3.)  Flect

claims that defendants Lumia Products Co. LLC ("Lumia") and Peter Lei have infringed upon

Flect's '689 Patent and '318 Registration by making, using, offering for sale, selling and

importing a product called PELVIC BOWL, which embodies or uses the inventions claimed in

the '689 Patent and is advertised, distributed, offered for sale and sold under a substantially

similar trademark as Flect's PELVIC CLOCK® product.  (Id. ¶ 6.)  Plaintiffs now bring claims

of patent infringement, trademark infringement, unfair competition and dilution of a famous

mark against defendants.  (Id. ¶¶ 33-59)

                 Defendants have failed to timely answer or otherwise move with regard to Flect's

complaint.  (Doc 19 (Clerk's Certificate of Default).)  Flect now moves for entry of a default

judgment and a permanent injunction against defendants, which defendants oppose.  For reasons explained, the entries of default are vacated and Flect's motion is denied.

<u>BACKGROUND</u>

The '689 Patent, entitled "Multidimensional Mobilization of Lumbar, Pelvic, and Hip Joints," was duly and legally issued on June 29, 2021, and names Iana Blinova as the inventor.  (Compl. ¶ 14.)  Flect is the owner of the entire right, title, and interest in and to the validly issued '689 Patent.  (<u>Id.</u> ¶ 16).  The '318 Registration was duly and legally registered on June 7, 2016 for the mark PELVIC CLOCK® for "the goods in Class 10, namely, device for physical rehabilitation, physical therapy, and sports medicine equipment designed primarily for medical use, namely, mobilization of pelvic and hip joints, and names Iana Blinova as the registrant." (<u>Id.</u> ¶ 22.)  Flect is the owner of the entire right, title, and interest in and to the '318 Registration.  (<u>Id.</u> ¶ 23.)  Plaintiff's PELVIC CLOCK® exercise devices have been sold in the United States, and around the world, for at least the past five years.  (<u>Id.</u> ¶ 4.)

Defendant Peter Lei, a resident of California, is the sole member of defendant Lumia Products Co. LLC, which is organized under the laws of California.  (Doc 31-1 (Lei Decl.) ¶¶ 3, 5-6.)  Defendants advertise, offer for sale and sell their PELVIC BOWL product on the shopping platform Amazon.com.  (<u>Id.</u> ¶ 25.)  Customers who have left reviews on the Amazon.com listing for PELVIC BOWL have noted the similarities between Flect's PELVIC CLOCK® product and defendants' PELVIC BOWL.  (<u>See</u> Compl. Ex. 4 at 5 of 9 ("I imagine this is basically the same product as the Pelvic Clock although I have not tried it out for comparison.  The Lumia Wellness Pelvic Bowl doesn't come with very thorough instructions, so I proceeded to use the online instructions that are given for the brand name Pelvic Clock."); <u>Id.</u> at 6 of 9 ("This device is just what I needed.  I had first been interested in the Pelvic Clock, but I

couldn't quite justify spending $80 on something that was clearly marked up much more than

was necessary.  The Lumia Pelvic Bowl was half the price so I took a chance. . . . Very, very

pleased with the product, and I believe it is priced fairly.").)



(Compl. Ex. 3 (PELVIC CLOCK®); Compl. Ex. 4 at 2 of 9 (PELVIC BOWL).)

       On November 12, 2021, Flect sent a cease-and-desist letter to defendants

notifying them of the '689 Patent, which was indicated as received on November 16, 2021 by the

United States Postal Service.  (Compl. ¶ 19.)  Defendants did not respond and continued to

market and sell their PELVIC BOWL product.  (Id.)  Plaintiffs filed the instant suit on December

6, 2021.  (Doc 1.)  Certificates of service on defendants were filed on December 27, 2021, noting

that on December 13, 2021, the complaint and summons were served on "Breella Fox, Manager

of CMRA who is designated by law to accept service of process on behalf of" both defendants. (Docs 14-15.)

Defendants did not respond to the Complaint by the answer deadline of January 3, 2022, and a Clerk's Certificate of Default was entered on January 7, 2022.  (Doc 19.)  On January 10, 2022, defendants' counsel appeared in the case for the first time and filed a letter motion requesting an "extension of time to answer before entry of the default judgment."  (Docs 20, 21.)  On the same day, the Court noted that there was no pending default judgment motion at the time and advised defendants' counsel to confer with Flect's counsel.  (Doc 22.)  This motion followed.  (Doc 27.)

DISCUSSION

     A.    <u>Whether the Entries of Default Should Be Vacated</u>

           i.    <u>Applicable Law</u>

The disposition of motions for entries of default judgment is left to the sound discretion of the district court.  <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993). However, "[b]ecause [there is] 'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' [the Second Circuit has] characterized a district court's discretion in proceeding under Rule 55 as 'circumscribed.'"  <u>City of New York v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 129 (2d Cir. 2011) (quoting <u>New York v. Green</u>, 420 F.3d 99, 104 (2d Cir. 2005) and <u>Enron</u>, 10 F.3d at 95).

When the defaulted defendant opposes a motion for default judgment, courts treat the opposition as a motion to vacate entry of default and examine whether good cause exists to vacate the entry.  <u>See</u> <u>Meehan v. Snow</u>, 652 F.2d 274, 276 (2d Cir. 1981).  <u>See also</u> Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause.")  "[T]he standard for

setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b)." Meehan, 652 F.2d at 276.  "Because Rule 55(c) does not define the term 'good cause,' [the Second Circuit has] established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment. . . . These criteria are: '(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.'"  Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (quoting Enron, 10 F.3d at 96 and Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013)).  "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result."  Enron, 10 F.3d at 96.

As to willfulness in the context of a default, the Second Circuit has interpreted it "to refer to conduct that is more than merely negligent or careless," but is instead 'egregious and . . . not satisfactorily explained.'"  Bricklayers, 779 F.3d at 187 (quoting SEC v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998)).  As an example, in Bricklayers, "there [was] no dispute that [defendant] was aware of the legal action pending against him and his company . . . . [but] failed to file a responsive pleading for over nine months after the receipt of the summons and complaint, nearly eight months after the defendants were informed that the plaintiffs had requested an entry for default, and six months after they were served with discovery demands." Id.  As another example, "defaults have been found willful where . . . an attorney failed . . . for flimsy reasons, to comply with scheduling orders; or failed, for untenable reasons, after defendants had 'purposely evaded service for months,' to answer the complaint."  SEC v.

McNulty, 137 F.3d 723, 738-39 (2d Cir. 1998) (citing Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666 (2d Cir. 1980) and quoting Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243-44 (2d Cir. 1994)).

   As to the existence of meritorious defenses, "[a] defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. . . . The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Enron, 10 F.3d at 98.  Notably, the absence of a meritorious defense is, on its own, enough to support entry of default judgment.  See Sony Corp v. Elm State Electronics, Inc., 800 F.2d 317, 320 (2d Cir. 1980) ("Good cause to reopen [the entered default] was not established because [defendant] had failed to demonstrate that it possessed a meritorious defense").

   Finally, as to prejudice, "[s]ome delay is inevitable when a motion to vacate [a default] is granted; thus, delay alone is not a sufficient basis for establishing prejudice. Something more is needed.  For example, delay may thwart plaintiff's recovery or remedy.  It also may result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion."  New York v. Green, 420 F.3d 99, 110 (2d Cir. 2005) (citations and quotations omitted).  The moving party has the burden of showing an absence of prejudice.  See id.

   ii. Application

   As an initial matter, before reviewing whether defendants' failure to timely respond to the Complaint after service was willful, the Court concludes that service was proper here.  Under the Federal Rules of Civil Procedure, defendants may be properly served when the plaintiff "deliver[s] a copy of [the summons and the complaint] to an agent authorized by

appointment or by law to receive service of process."  Rule (4)(e)(2)(C), Fed. R. Civ. P.  As defendants themselves note, "[a] copy of the case initiating documents were left in [Lei's] mailbox at [Lei's] Commercial Mail Receiving Agency ("CMRA"), which is registered under California law for service of process on [Lei] and Lumia Products Co. LLC."  (Doc 31-1 ¶ 8.) Defendants, however, argue that service was improper because "Ms. Fox was supposed to send the all [sic] documents via first-class mail to the home address of Mr. Lei[, but this] never happened."  (Def. Br. at 3.)  It is, however, undisputed that Flect delivered the copy to an agent that was "authorized by appointment or by law to receive service of process" for defendants. The agent's—not Flect's—failure to take the other steps regarding service of process under California law does not nullify service here.

Next, the Court concludes that although defendants are in default following proper service, the default was not willful.  Flect may have done what it needed to get the case-initiating documents to the defendants, but according to the defendants, the defendants' authorized agent did not.  The agent neglected to forward the documents to Lei's personal residential address accompanied by a "Certificate of Mailing."  (Lei Decl. ¶¶ 10-13).  As it appears to the Court, defendants finally "found the court documents in a mailbox" sometime before January 10, 2022, and had counsel appear in the instant action three days after the Certificate of Default was entered and one week after the deadline for file an answer to the complaint.  (Docs 20, 21.)  Given the defendants' explanation for the default and the relatively short time between the missed deadline and defendants' appearance in the action, the Court concludes that the defendants' default is better characterized as "negligent or careless," rather

than "egregious and . . . not satisfactorily explained."  <u>Bricklayers</u>, 779 F.3d at 187.

   As to meritorious defenses, defendants have "present[ed] some evidence beyond conclusory denials to support [their] defense," which need not indicate "a likelihood that it will carry the day, but [only that] the evidence submitted, if proven at trial, would constitute a complete defense."  <u>Enron</u>, 10 F.3d at 98.

   For example, as to Flect's claims for trademark infringement, unfair competition and dilution of a famous mark, defendants argue in part that "no reasonable customer would confuse the two products," or "confuse the two products as coming from the same source" because (1) "[t]he PELVIC CLOCK has a literal clock-face on it . . . [while] the Lumia Wellness Pelvic Bowl has the 'Lumia Wellness' logo at the bottom of the bowl" and (2) the "PELVIC CLOCK has a triangular shaped groove, where the '3' and '9' sides are the thickest parts of rim, while the '6' side is the narrowest . . . . In contrast, the Lumia Wellness Pelvic Bowl is a bowl-shaped, circulate and has uniform thickness."  (Def. Br. at 7-9.)  Defendants also argue that not only has Flect failed to provide evidence that "Pelvic Clock" is a "famous" trademark such as evidence of sales or customer associations, the '318 Registration also "specifically exclude[s] from its trademark registration" the word "PELVIC," and that defendants are merely using the term "PELVIC" in a descriptive and generic sense, which is further corroborated by the fact that the term "Pelvic Bowl" itself is another accepted way to generally refer to the pelvis, which is defined as a "bowl-shaped structure."  (<u>Id.</u> at 7.)

   As to Flect's patent claims, defendants contest venue.[1]  They note that under Supreme Court precedent, a patent infringement claim may be brought in (1) either the judicial

---

[1] Although defendants argue that this Court "lacks personal jurisdiction to hear the patent claim," (Def. Br. at 5), they cite to 28 U.S.C. § 1400, which provides for the proper venue in bringing patent claims, and also cite to <u>TC Heartland LLC v. Kraft Foods Grp. Brands LLC</u>, 137 S. Ct. 1514 (2017), which focused on interpreting the meaning of "residence" in the venue statute of 28 U.S.C. § 1400(b) as applied to domestic corporations.  (Def. Br. at 5.)

district where the defendant resides or (2) where the defendant has committed acts of infringement and has a regular and established place of business.  Specifically, they cite to <u>TC Heartland LLC v. Kraft Foods Grp. Brands LLC</u>, 137 S. Ct. 1514 (2017), to argue that nationwide sales, including shipping "allegedly infringing products into the State," do not establish proper venue, regardless of whether it may satisfy the requirements of venue under 28 U.S.C. § 1391(c) (that the defendant be subject to the court's personal jurisdiction).  Defendants contend, citing to defendant Lei's affirmation, that Flect "cannot meet its burden that Defendants have an established place of business in New York.  Defendant Lei resides in California and he operates his business entirely within the State of California . . . . Similarly, Defendant Lumia is incorporated in the State of California . . . . [and] has no place of business in New York State." (Def. Br. at 6.)

As to prejudice, "delay alone is not a sufficient basis for establishing prejudice." <u>Green</u>, 420 F.3d at 110.  Here, vacatur of the entries of default will cause some delay but will not thwart plaintiff's recovery or remedy after litigation on the merits, nor will it result in the loss of evidence, create increased difficulties of discovery or provide greater opportunity for fraud and collusion.  <u>Id.</u>  Accordingly, the Court concludes that there is no meaningful prejudice to Flect should the entries of default be set aside.

Finally, in addition to the three factors of willfulness, meritorious defenses, and prejudice, the Court also considers "[o]ther relevant equitable factors . . . for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result."  <u>Enron</u>, 10 F.3d at 96.  The Court concludes that the defendants' failure to timely respond was a mistake in good faith, and that an entry of default judgment against defendants would be a harsh result, especially when it appears

likely that it was precipitated in significant part by the defendants' agent's failure to follow protocol for service of process.

Therefore, recognizing the Second Circuit's "'strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,'" the Court finds that there is good cause to set aside the entries of default in the instant case.  <u>Mickalis</u>, 645 F.3d at 129.

CONCLUSION

The Court has considered all the arguments of the parties, whether or not they are expressly referenced here.  For the reasons above, the entries of default are VACATED and Flect's motion for a default judgment and a permanent injunction is DENIED.  The Clerk is respectfully directed to terminate the motion (Doc 27).


SO ORDERED.


P. Kevin Castel
United States District Judge


Dated:  New York, New York
        April 5, 2022